UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY GREER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>RACHELLE BRAUN, CAPTAIN )<br>STEPHEN RIDINGS, and )<br>MADISON COUNTY JAIL )<br>ADMINISTRATOR (official capacity )<br>only), )<br>)<br>Defendants. ) | Case No. 3:20-cv-01323-GCS |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

### I.   INTRODUCTION AND BACKGROUND

Pending before the Court is Defendant Braun's and Defendant Ridings's motion for summary judgment. (Doc. 36).[1] Defendants argue they are entitled to summary judgment as Plaintiff Greer was provided timely and appropriate medical care while incarcerated at the Madison County, Illinois Jail. Plaintiff filed an opposition to the motion and an exhibit in support of his opposition. (Doc. 39, 40). Based on the reasons delineated below, the Court **GRANTS** the motion for summary judgment.

On December 10, 2020, Plaintiff, a former pretrial detainee at the Madison County Jail, brought this civil rights action *pro se* pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff

---

[1]   Pursuant to Federal Rule of Civil Procedure 56, *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992) and *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), Defendants filed a notice informing Plaintiff of the consequences of failing to respond to the motion for summary judgment. (Doc. 37).

alleges that while he was incarcerated in the Madison County Jail ("Jail") he was denied adequate medical care for an obvious fracture to his left hand and wrist. *Id*. Specifically, Plaintiff's complaint alleges the following: Plaintiff injured his dominant (left) hand when he stumbled and fell in June 2020. *Id*. at p. 1. Nursing staff examined his injury without delay and gave Plaintiff ice for the swelling and Tylenol for the pain. *Id*. at p. 6. X-rays were taken the next day which showed no acute fractures. *Id*. at p. 7. Even so, Plaintiff continued to experience swelling and pain. *Id*. at p. 6. A hard knot formed between his left thumb and inner wrist. *Id*. at p. 2. He suspected the deformity was caused by a broken bone. *Id*. In fact, he described the injury as an "obvious[] broken hand." (Doc. 4, p. 1).

When a second set of x-rays yielded the same results as the first, however, Nurse Rachelle Braun concluded that the knot was nothing more than a ganglion cyst. (Doc. 1, p. 2). She advised Plaintiff that this type of cyst is fluid-filled and sometimes subsides on its own. *Id*. Plaintiff conducted his own research and disagreed with the diagnosis. *Id*. He learned that cysts were typically soft, but the knot in his wrist was hard. *Id*. at p. 3. He also questioned his treatment as he was only given 12 aspirins for a three day period. *Id*. Plaintiff also believed that ganglion cysts were typically treated with steroids and nonsteroidal anti-inflammatory drugs ("NSAID"). *Id*.

When his symptoms did not subside, Plaintiff requested treatment with an outside provider on August 30, 2020. (Doc. 1, p. 3). Nurse Braun denied Plaintiff's request. *Id*. at p. 3-4. A third set of x-rays revealed degenerative joint disease (arthritis), and nursing staff informed Plaintiff that he could purchase Tylenol to treat his pain. *Id*. at p. 17.

Plaintiff subsequently filed grievances with Captain Ridings to complain of tingling, numbness, and the loss of mobility in his hand. (Doc. 1, p. 4). Plaintiff asked Captain Ridings to meet with him to discuss the injury. *Id*. However, the captain did not respond to his grievances. *Id*. On October 27, 2020, Plaintiff was fired from his trustee job because he was unable to use his left hand. *Id*. at p. 23. His complaint requests money damages and outside medical attention. *Id*. at p. 1.

On February 5, 2021, the Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and allowed him to proceed on a Fourteenth Amendment due process claim against Defendants Braun and Ridings for denying him adequate medical treatment for an obvious fracture to his left hand and wrist since June 2020. (Doc. 11). The Court also added the Madison County Jail Administrator in his official capacity to carry out any injunctive relief ordered by the Court. *Id*.

On October 29, 2021, Plaintiff was transferred to the Illinois Department of Corrections ("IDOC"). He is currently incarcerated at Taylorville Correctional Center ("Taylorville").

## II.   UNDISPUTED FACTS

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

During the relevant times alleged in the complaint, Plaintiff was housed in the Madison County, Illinois Jail as a pretrial detainee. Plaintiff was booked in the Jail on

March 24, 2020. Defendant Braun was the Jail Infirmary Charge Nurse. Defendant Ridings was a captain at the Jail.

On June 17, 2020, Plaintiff hit his left hand on the cellblock bars. He informed a guard of the incident and was taken to the jail infirmary. Jail medical staff examined Plaintiff and told him that his hand would be x-rayed the following day. Plaintiff was given Tylenol for the pain.

On June 18, 2020, Plaintiff's hand was x-rayed. That same day, Dr. Matthew Epstein read the x-rays and found the following: "[t]here is no evidence of acute fracture. There is an exostosis involving the first metacarpal. There is mild loss of the first metacarpal joint space. Bones are well mineralized." (Doc. 36-4).

On or about July 4, 2020, Plaintiff filed a grievance complaining that his left hand was still swollen. (Doc. 36-5). Two days later, Plaintiff placed a Sick Call Slip complaining that "a bone sticken [sic] out my hand. I think something is wrong." (Doc. 36-6). Plaintiff testified that during this time he was able to write with his left hand after the swelling went down. (Doc. 36-1, p. 7).

Plaintiff saw Jail Medical Staff on July 7, 2020 and was told that his hand would be x-rayed for a second time. (Doc. 36-7). That same day, Plaintiff's left hand was x-rayed. Dr. Nicolaus Kuehn read the x-rays and found the following: "[n]o acute fracture or dislocation. The osseous structures appear intact. Joint spaces are preserved. Soft tissues are unremarkable." (Doc. 36-8).

On July 9, 2020, Defendant Braun responded to Plaintiff's July 4, 2020 grievance as follows:

> Your grievance not dated, but received on 07/04/2020 was heard. Please accept this as your formal response to said grievance. You were seen by nursing staff 06/17/20 and x-ray was done 06/18/20, results were: no acute fracture. You were seen by Jail's Nurse Practitioner on 07/07/20. Second x-ray done 07/07/20. Results again were no acute fracture. Soft tissue trauma may remain swollen and painful for 6-8 weeks. You have received proper medical attention.

(Doc. 36-9).

On July 26, 2020, Plaintiff filed another grievance complaining about his left hand. (Doc. 36-11). On July 28, 2020, Plaintiff placed another Sick Call Slip complaining that "the bone or what ever it is is still poking out of my hand . . . ." (Doc. 36-10). Plaintiff was seen by Jail medical staff on July 29, 2020. During this visit, Plaintiff was informed he had a ganglion cyst on his hand, which would subside on its own. (Doc. 36-12).

On July 30, 2020, Defendant Braun addressed Plaintiff's July 26, 2020 grievance as follows:

> Your second grievance dated 07/26/20 was received and heard. Please accept this as your formal response to said grievance. You[r] previous grievance dated 07/04/20 was answered on 07/09/20. You saw the Nurse Practitioner on 07/07/20. You have had 2 x-rays of L hand, both showed No acute osseous (bone) abnormality. I saw you for a sick call visit 07/29/20 and this was explained to you. I also told you that the bump on your hand was probably a ganglion cyst, which is fluid filled. This may subside on its own. There is no further treatment indicated.

(Doc. 36-12; Doc. 39, p. 5).

Plaintiff filed yet another grievance regarding his left hand on August 30, 2020. (Doc. 36-13). Defendant Braun responded to this grievance on September 4, 2020 with the following:

> Your grievance dated 08/30/20 was received and heard. Please accept this as your formal reply to said grievance. This is a duplicative grievance that was answered on 07/09/20 and 07/30/20. I will have you see the Nurse Practitioner during her next clinic visit.

(Doc. 36-14). Plaintiff was seen by Jail medical staff on September 8, 2020, and his hand was x-rayed for a third time. (Doc. 36-15). Dr. Walter Uyesugi interpreted the x-rays and concluded that there was no acute fracture or dislocation. (Doc. 36-16). Dr. Uyesugi further noted that Plaintiff had modest degenerative joint disease. *Id.*

On September 25, 2020, Plaintiff wrote a grievance addressed to Defendant Ridings complaining that his left hand was still in pain, that he was awaiting the results of his third x-ray, and that he needed outside care. (Doc. 36-17; Doc. 39, p. 7). Plaintiff was again seen by Jail medical staff on September 29, 2020, and the notes stated that his left hand was neither fractured nor dislocated. (Doc. 36-18).

On October 5, 2020, Defendant Braun addressed Plaintiff's September 25, 2020 grievance stating:

> Your grievance dated 09/25/20 was received and heard. This is your formal response to said grievance. You have had three negative x-rays. You have seen the nurse practitioner three times. You do have modest degenerative joint disease otherwise known as arthritis. There is no treatment for this other than pain relief. You may buy Tylenol off the commissary at your discretion. There is nothing that a specialist would outside of jail do for you.

(Doc. 36-19; Doc. 39, p. 6).

On December 8, 2020, Plaintiff submitted another grievance regarding his hand stating that it was still bothering him and that he was in pain. (Doc. 39, p. 8).

On October 29, 2021, Plaintiff was transferred to Graham Correctional Center ("Graham"). (Doc. 39, p.10). The reception offender medical history report indicated that

Plaintiff had a hard nodule on his left hand due to hitting it in the Jail in Madison County. *Id.*

On April 7, 2022, while incarcerated at Taylorville, Plaintiff had a fourth x-ray on his left hand. (Doc. 40, p. 2). The findings of that x-ray were as follows: "[n]o acute fractures or dislocations are noted. The surrounding soft tissues are normal." *Id.* The impression of that x-ray was: "[n]o acute abnormalities." *Id.* Further on June 1, 2022, Plaintiff inquired with medical staff at Taylorville about the results of his x-ray; the nurse practitioner's note indicated that the x-ray was negative for acute findings. (Doc. 40, p. 1).

### III.   LEGAL STANDARDS

**A.   Summary Judgment Standard**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011).

As the Seventh Circuit has explained, and as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

B.  **Medical Care Claim under the Fourteenth Amendment**

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–653 (7th Cir. 2005)(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009)(stating that "deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm—not to demand specific care. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail on such a claim, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *See Arnett*, 658 F.3d at 750; *accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *See Gayton v. McCoy*, 593 F.3d

610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994)(violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either knowingly or recklessly disregarded it. *See Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Negligence, gross negligence, or even 'recklessness' as that term is used in tort cases, is not enough." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987) (citation omitted). Also, "mere disagreement with the course of the inmate's medical treatment does not constitute an Eighth Amendment claim of deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (internal quotations and citations omitted). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

The constitutional rights of pretrial detainees, however, are "derived from the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, which is applicable to convicted prisoners." *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (citations omitted). Pretrial detainees are to remain free from "punishment," while prisoners are "entitled to be free from conditions that constitute 'cruel and unusual punishment.'" *Id.* (citing *Farmer*, 511 U.S. at 832 and *Bell v. Wolfish*, 441 U.S. 520, 535

(1979)). The Seventh Circuit previously applied a deliberate indifference standard derived from the Eighth Amendment to constitutional claims raised by pretrial detainees, but the application of that standard was called into question by the Supreme Court in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). In *Kingsley*, the Supreme Court held that a standard of objective reasonableness applies to excessive force claims brought by pretrial detainees.

The Seventh Circuit extended the holding of *Kingsley* to medical care claims brought by pretrial detainees; in doing so it sided with the position taken by the Ninth and Second Circuits. *See Miranda v. County of Lake*, 900 F.3d 335, 351-352 (7th Cir. 2018). In essence, the Court considers whether, under the totality of the circumstances, the individual accused of having provided inadequate medical care or inadequate access to medical care responded in an objectively reasonable manner. *See McCann v. Ogle County, Illinois*, 909 F.3d 881, 886 (7th Cir. 2018).

The Supreme Court described the application of the objective reasonableness standard in *Kingsley* as follows: "[a] court (judge or jury) cannot apply this standard mechanically. Rather, objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (citations omitted). The Seventh Circuit reiterated this principle in *McCann*, explaining that, when evaluating whether challenged conduct is objectively unreasonable, courts must "focus on the totality of facts and circumstances . . . ." *McCann*, 909 F.3d at 886.

## IV. DISCUSSION

Initially, the Court notes that the claim for injunctive relief against the Madison County Jail Administrator is moot as Plaintiff is no longer a pretrial detainee. Currently, Plaintiff is incarcerated with the Illinois Department of Corrections, and he is no longer housed at the Madison County Jail.

Next, Defendants argue they are entitled to summary judgment as there is no evidence that Defendants failed to provide Plaintiff with proper medical treatment. Plaintiff responds that his hand was not treated properly while he was at the Jail as he was given three different x-rays resulting in three different diagnoses. Further, Plaintiff maintains that had he had proper treatment his hand would not be in the condition that it is currently in. While neither party addressed the issue of whether Plaintiff had a serious medical condition, the Court, based on the record and after drawing all inferences in the light most favorable to Plaintiff, finds that a reasonable jury could conclude that Plaintiff had an objectively serious medical condition. However, based on that same record and construing the evidence in the light most favorable to Plaintiff, the Court finds that there is no evidence in the record to show that Defendants were objectively unreasonable in treating Plaintiff's serious medical need under the Fourteenth Amendment.

The record reveals that Jail staff, Defendant Braun, and Defendant Ridings were all responsive to Plaintiff's healthcare needs. Plaintiff consistently complained to jail staff, and he received prompt and adequate responses. Thus, there is no evidence that Defendants either ignored or disregarded Plaintiff's complaints. Instead, Plaintiff's

complaints were repeatedly addressed and treated by the Jail medical staff. For example, Plaintiff received three x-rays for his left hand while incarcerated in the Madison County Jail. There is also no evidence that Plaintiff's safety and health were disregarded. The medical treatment simply was not the treatment Plaintiff wanted and/or demanded at that specific time. The record clearly demonstrates that the Jail Medical Staff and the Defendants provided appropriate and continued medical treatment to Plaintiff for his left hand.

Further, a court will not find a jail official to have acted with deliberate indifference to an inmate's medically related requests if he reasonably relied on the judgment of medical personnel. *See Miranda*, 900 F.3d at 343. A jail official is entitled to defer to the judgment of jail health professionals, so long as the official in question did not ignore the plaintiff. *See Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir. 2017); *Hayes*, 546 F.3d at 527–528; *Johnson v. Doughty*, 433 F.3d 1001, 1010–11 (7th Cir. 2006); *Greeno*, 414 F.3d at 655–656; *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Even construing the evidence in the light most favorable to Plaintiff, the Court finds that Defendant Braun's and Riding's conduct or lack thereof cannot be classified as objectively unreasonable to Plaintiff's medical needs. The record shows that Plaintiff received ongoing and substantial medical treatment from other healthcare members at the jail. Additionally, Plaintiff conceded he was seen by a physician at the Jail for his hand.

Moreover, Plaintiff's response and exhibit to the summary judgment motion do not establish that Defendants were objectively unreasonable to his medical needs.

Plaintiff cannot point to any evidence that either Defendant Braun or Defendant Ridings failed to provide medical care or were objectively unreasonable to his medical needs. In fact, Plaintiff's fourth and last x-ray taken on April 7, 2022 did not find a fracture of his left hand; instead the findings were: "[n]o acute fractures or dislocations are noted. The surrounding soft tissues are normal" and the impression was "[n]o acute abnormalities." (Doc. 40, p. 2). Plaintiff has failed to adduce any evidence that could allow a reasonable jury to find in his favor.

## V.   CONCLUSION

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment. (Doc. 36). The Court **FINDS** in favor of Defendants Rachelle Braun and Captain Stephen Ridings and against Plaintiff Anthony Greer. Additionally, the Court **FINDS** the claim for injunctive relief **MOOT** against the Madison County Jail Administrator. Further, the Court **DENIES** as **MOOT** Plaintiff's Motion for Status (Doc. 41). The Court **DIRECTS** the Clerk of the Court to enter judgment and close the case.

**IT IS SO ORDERED.**

**DATED: October 27, 2022.**

Digitally signed by Judge Sison 2
Date: 2022.10.27 14:20:31 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**